# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

CHRISTINA STRIBEL,      )
                    )
        Petitioner,    )
                    )
v.                   )     **Case No. CIV 15-355-RAW-KEW**
                    )
DEBBIE ALDRIDGE, Warden,   )
                    )
        Respondent.   )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Dkt. 2). Petitioner, a state prisoner who is represented by counsel, currently is incarcerated at Mabel Bassett Correctional Center in McLoud, Oklahoma. She is attacking her conviction in Okmulgee County District Court Case No. CF-2011-414 for First Degree Murder, Second Degree Arson, and Second Degree Burglary. Petitioner raises the following grounds for relief:

    I.     The trial court abused its discretion in allowing the State to present evidence of an "expert" opinion, when that "expert" opinion was not previously disclosed to the petitioner before trial, contrary to *Brady* and the Fourteenth Amendment to the United States Constitution.

    II.    The state courts unreasonably rejected Petitioner's claim that the "expert" opinion was improper as it was purely speculative, which deprived Petitioner of a fair trial in violation of the Fourteenth Amendment.

    III.   The state courts unreasonably rejected Petitioner's claim that the State's use of the codefendant's conviction to argue codefendant Martin was previously found guilty of lying for Petitioner.

IV.     The state courts unreasonably rejected Petitioner's claim that the trial court erred when it instructed the jury that a material witness, Linda Parenti, invoked her privilege under the Fifth Amendment.

V.      The state courts unreasonably rejected Petitioner's claim that the trial court erred when it allowed hearsay evidence into evidence through OSBI agents and lay witness Towana Smith--and then unreasonably prohibited Petitioner from using that same hearsay to impeach the witnesses.

VI.     The state court unreasonably rejected Petitioner's claim that the trial court erred when it improperly instructed the jury that they had to unanimously acquit Petitioner of First Degree Murder before they could even consider a lesser-included offense.

VII.    The state courts unreasonably rejected Petitioner's claim that the trial court erred when it allowed prejudicial and inflammatory statements which should be considered prosecutorial misconduct.

VIII.   The state courts unreasonably rejected Petitioner's claim that the State intentionally withheld its plea agreement with jailhouse informants.

IX.     The cumulative effect of all of the state courts' errors addressed above deprived Petitioner of a fair trial.

Respondent concedes that Petitioner has exhausted her state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A.      Petitioner's Judgment and Sentence in Okmulgee County District Court Case No. CF-2011-414.

B.      Petitioner's direct appeal brief.

C.      Petitioner's motion for new trial and request for evidentiary hearing on newly-discovered evidence, filed in Petitioner's direct appeal.

D.    The State's brief in Petitioner's direct appeal.

E.    Petitioner's appellate reply brief.

F.    Summary Opinion affirming Petitioner's Judgment and Sentence, denying application for evidentiary hearing on Sixth and Fourteenth Amendment claims, denying motion for new trial, and denying request for evidentiary hearing on newly-discovered evidence. *Stribel v. State*, No. F-2013-389 (Okla. Crim. App. Sept. 16, 2014) (unpublished).

G.    Transcripts.

H.    Original Record.

Petitioner has not filed a reply to Respondent's response.

**Facts**

This case arose from Petitioner's October 29, 2011, murder of her stepfather Timothy

Parenti, the burglary of his house, and the subsequent burning of his body and his house. The

State set forth the facts of the case in Petitioner's direct appeal:

At approximately 2:30 p.m. on October 31, 2011, Deputy Sheriff Sam Matthews of the Okmulgee County Sheriff's Office was directed to 14445 Lavender Road, a residence in Schulter, Oklahoma regarding a dead, burned body (Tr. II, 50-52). Deputy Matthews arrived at the scene and ran to Linda Parenti who was sitting on the ground in the back yard crying (Tr. II, 54). Mrs. Parenti pointed to an open door leading into the garage of the house (Tr. II, 55, 56). Deputy Matthews entered the house and followed footprints to a badly burned body with a portion of its torso missing lying on the living room floor (Tr. II, 57, 58). Mrs. Parenti later identified the body of the victim as her husband Tim Parenti (Tr. II, 69).

Chief Deputy Smokey Patchin arrived at the scene and entered the residence and saw the body of Mr. Parenti lying on the living room floor (Tr. II, 71). There was a very strong chemical odor throughout the house and the utility room floor was very slippery and wet (Tr. II, 73). Because there was a circular wound to Mr. Parenti's head that Deputy Patchin believed to be a

gunshot wound, he called the Oklahoma State Bureau of Investigation ("OSBI") for assistance in the investigation (Tr. II, 72, 77-78).

OSBI Agent Jenny Virden came to the scene that day and took photos of the property and damage (Tr. V, 41). Agent Virden noted the door to the garage was open and the door frame was pushed inward and was not attached to the wall (Tr. V, 34-35; State's Exh. No. 63). The striker plate and screw were lying on the floor of the garage and damage to the door indicated that it had been forced open (Tr. V, 38-40). Agent Virden collected two gloves found lying on the garage floor and turned them over for DNA analysis (Tr. II, 160, 163; Tr. V, 43; State's Exh. Nos. 35 & 36). OSBI Criminalist Antje Stambaugh extracted DNA from the submitted gloves and obtained a male DNA profile on one glove (State's Exh. No. 35) and obtained a major male component and a minor component on the other glove (State's Exh. No. 36) (Tr. III, 190-92). OSBI Criminalist Todd Lindsey analyzed the profiles and determined that DNA on State's Exhibit Number 35 and the major component on State's Exhibit Number 36 matched [codefendant] Dustin Martin in all sixteen loci (Tr. III, 200-01; State's Exh. No. 57). The minor component found on State's Exhibit Number 36 was insufficient for comparison (Tr. III, 192-93). Agent Virden noted the garage floor was covered with soot and there was a strong odor of accelerants (Tr. V, 42, 44). The lid was also missing from one of the gas cans found in the garage (Tr. V, 44)

Inside the house, Agent Virden entered the laundry room where the floor was slick and wet with liquid that had a strong accelerant odor (Tr. V, 44-45). There was smoke damage on the walls and soot on the floor (Tr. V, 46; State's Exh. No. 72). Proceeding through a hallway toward the body, Agent Virden found the hallway did not have fire damage but did have severe smoke damage and was covered with black soot (Tr. V, 45-47). She located a bedroom on the south side of the hall and found open metal lock boxes on the bed (Tr. V, 49-50; State's Exh. No. 75). The living room was badly burned with severe smoke damage (Tr. V, 51). Most of the burn was located in the center of the living room (Tr. V, 51). In the living room, Agent Virden observed a severely burned wooden dining room chair, the body of Tim Parenti, and a strong odor of accelerant (Tr. V, 52-53, 89-90). The body was so badly burned it was missing some limbs and there was a bullet hole in the right side of the victim's head (Tr. V, 53-54; State's Exh. Nos. 78 & 79). There was a strong odor of accelerant on the body and Agent Virden observed shoe impressions that were burned into the carpet right near the body (Tr. V, 58, 61; State's Exh. Nos. 80 & 81). Agent Virden cut the impressions out of the

carpet in the living room (Tr. V, 80; State's Exh. Nos. 82 & 83). The impressions were consistent with a Size 7 women's Nike Shox tennis shoe (Tr. V, 82, 83). Agent Virden explained that the impressions were burned into the carpet after accelerant was transferred to the bottom of the shoes, and the tread on the shoes transferred the accelerant to the carpet and, as the fire burned, the accelerant left by the shoe pattern heated up and burned into the carpet (Tr. V, 84). Because of the bullet hole in Mr. Parenti's head, Agent Virden and other officers also looked for firearms, shell casings, and projectiles but never found any (Tr. V, 99).

Agent Virden continued to the kitchen where she observed the ceramic tile floor was slick and covered with a liquid and had a strong odor of accelerant (Tr. V, 91). Some of the drawers and cabinets were open and the refrigerator was pulled away from the wall (Tr. V, 92-93). On top of the counter, Agent Virden found a box and, next to it, a wadded piece of paper with a void pattern in the soot underneath it indicating it was placed there before the fire (Tr. V, 95-96). Agent Virden collected this piece of paper (Tr. V, 95; State's Exh. No. 93). The kitchen was badly damaged by smoke and there was some charring damage to some items including the box of papers on the counter (Tr. V, 90-91).

With regard to the outside of the residence, Agent Virden documented large tire tracks, consistent with a dually truck, that led north of the residence to a line of trees (Tr. V, 31-33; State's Exh. No. 60). There was also a charred blanket lying on the ground next to the exterior propane tank (Tr. V, 27).

State Fire Marshal Agent Terry Smith, an expert in fire investigation, arrived to assist in the investigation (Tr. II, 91, 92). Agent Smith examined the property and testified there were pour patterns of an ignitable fluid from one end of the hallway (leading from the garage to the living room) to the other (Tr. II, 104). There was also a distinct hydrocarbon accelerant odor in the hallway, kitchen, and laundry room (Tr. II, 100, 105, 115). The body was burned in an outline and the way it burned (the amount of consumption of the body) indicated there was probably an ignitable liquid poured on the body and the pour patterns in the area of the body were consistent with his finding (Tr. II, 113, 114). There was no evidence that this was an electrical fire (Tr. II, 116). Agent Smith took samples of the liquid that was on the kitchen floor and the laundry room floor (Tr. II, 118). OSBI Agent Brad Rogers analyzed the samples and found that Item 1A (the sample from the laundry room floor referenced as evidence item 6 and depicted in State's Exh. Nos. 9 & 10)

contained an ignitable liquid in the heavy petroleum distillate class 2 (Tr. III, 183). Because the gypsum boards in the house held no residual heat, the fire must have occurred at least twelve hours prior to the arrival of investigators (Tr. II, 129-30). As to why the house was not completely consumed by fire considering the wide-spread presence of accelerants, Agent Smith explained that there was a lack of continuity in the pour down the hallway and the home was well-built with double pane windows and once the oxygen was depleted the fire went out (Tr. II, 128- 29).

Forensic pathologist and medical examiner Joshua Lanter testified that Mr. Parenti died of a gunshot wound to his right temple (Tr. II, 137, 143-44). The bullet entered Mr. Parenti's right temple, went through his skull, and exited the back of his head (Tr. II, 143-44). Dr. Lanter determined it was a contact gunshot wound due to the soot found on the skin and skull of Mr. Parenti (Tr. II, 144-46). Because there was no soot found in Mr. Parenti's airways, Dr. Lanter determined that Mr. Parenti was not breathing at the time of the fire and, therefore, was deceased before the fire occurred (Tr. II, 150).

Officers began investigating the case and developing witnesses. They learned that on October 28, 2011, a few days prior to the discovery of Mr. Parenti's body, Dustin Martin, who had been dating the defendant for approximately three months, called his mother Cheryl Flurry at approximately 9:00 p.m. (Tr. II, 185-86). Ms. Flurry spoke with Mr. Martin and with the defendant . . . and the defendant was very upset (Tr. II, 187, 189). In that phone call, the defendant told Ms. Flurry that Mr. Parenti, her step-father, had touched her children inappropriately and molested them and rubbed them raw while giving them a bath (Tr. II, 188-89). The defendant said that Mr. Parenti would pay and that if she killed her step-father, she would plead insanity because of what Mr. Parenti had done to her during her childhood (Tr. II, 190-91). The defendant also said that her mother was a nurse and could cover up the death by making it look like an accident or a heart attack (Tr. II, 191, 193). Ms. Flurry told the defendant not to do anything and that she needed to take the children to the emergency room to be examined by a doctor and to call the police and let them take care of the issue (Tr. II, 191-92).

On October 31, 2011, Wade Hickey was alone at his gold buying business, Dakota Financial, in Oklahoma City at I-44 and May when the defendant and a man approached him to sell a necklace and a ring (Tr. III, 171, 172). Mr. Hickey took down information from the defendant's photo ID and paid the defendant $934 for the jewelry and gave the defendant a receipt for

the items (Tr. III, 176, 177; State's Exh. No. 22). Mr. Hickey was later contacted by OSBI agents and he gave them his copy of the receipt and the jewelry he bought from the defendant (Tr. III, 175; State's Exh. No. 23). Tim Parenti's mother, Selma Parenti, later identified the ring and diamond necklace recovered from Mr. Hickey as Mr. Parenti's wedding ring and necklace (Tr. III, 203, 204).

That same day, October 31, 2011, Deputy Kenny Loftiss of the Washita County Sheriff's Office was advised of a burned out car one mile east of State Highway 44 off I-40 in a rural area (Tr. III, 26, 27). The car was burned beyond recognition and both the license plate and VIN numbers were completely destroyed (Tr. III, 27, 28). Deputy Loftiss called OSBI Agent Mark Wood for assistance in locating the owner (Tr. III, 29, 37). After examining the remains of the vehicle, Agent Wood was able to determine that the car was a 2005 Buick LeSabre registered to Linda Parenti (Tr. III, 38-39). In addition, there was a note on the file regarding a homicide; therefore, Agent Wood contacted Agent Virden regarding the discovery and identification of the vehicle (Tr. III, 39).

On November 1, 2011, Tuttle police came to the home of Andrew and Towana Smith, the defendant's former in-laws, looking for a Dodge dually and asking if the defendant was there, but [the officers] would not tell Mr. Smith why they wanted to speak with the defendant (Tr. IV, 5-6, 10-11, 22). Approximately ten minutes later, Mr. Smith saw a dually truck belonging to Tim Parenti pull into his driveway (Tr. IV, 5, 6, 8). When Mr. Smith saw the truck, he picked up the phone and dialed 9-1-1 but then set the phone on the counter without talking to police (Tr. IV, 11-12). A moment later, the defendant's children (H.S. and J.S.) knocked on his back door and Mr. Smith let them in (Tr. IV, 5-6). A moment later, the defendant came to the back door [with a] man with whiskers and dressed in a hoodie, whom Mr. Smith did not recognize, backed up to his bay window (Tr. IV, 11-12). The defendant told Mr. Smith that she wanted him to take the children for a little while and keep them safe and said they would need counseling (Tr. IV, 12-13). The defendant told Mr. Smith that Tim Parenti was dead and that she had shot and killed him (Tr. IV, 13, 19). The defendant asked if she could come in and Mr. Smith allowed her in but not the man with her (Tr. IV, 20). After talking more about the children, Mr. Smith told the defendant that the police had been there earlier (Tr. IV, 20). About that same time, Mr. Smith saw lights pulling up into the driveway and told the defendant that the police would be back (Tr. IV, 21). The defendant then said she had to go and ran out the back door, without

saying anything to the children, and was arrested (Tr. IV, 20). Dustin Martin was not apprehended until he turned himself in the next day.

Agent Virden searched the Dodge dually and found a Garmin NUVI GPS device and .38 caliber ammunition in the center console (Tr. V, 101, 102). She also found a receipt from Dakota Financial in a pillowcase on the floor board right behind the driver's seat and numerous car title documents in the glove box including a title to the burned out 2005 Buick LeSabre (Tr. V, 102, 107-08; State's Exh. No. 98). The GPS device was later examined by OSBI Special Agent John Jones which showed the GPS was taking readings from the Schulter area from 6:30 to 7:30 p.m. on October 29, 2011 (the same date and location of Tim Parenti's death) and also showed several readings from west of Oklahoma City on October 30, 2011 between 4:30 a.m. to noon (close to the location where the burned out car was found) (Tr. III, 55, 58).

While The defendant was housed at the Okmulgee County Jail, she made incriminating statements to two inmates. Laura Southern, an inmate in the same pod with the defendant, testified that one day she went up to the defendant's cell to borrow some Sweet 'n Low (Tr. III, 212). Ms. Southern found the defendant sitting on the floor crying (Tr. III, 212). Ms. Southern asked her what was wrong and the defendant replied that she was afraid she would get the death penalty because she shot her step-father (Tr. III, 212). The defendant said that they had planned to set the house on fire and that her mother was mad at her because this was supposed to have been an accident and Mr. Parenti was supposed to die in a fire and not by gunshot (Tr. III, 212-13). The defendant said that if anything happened Mr. Martin would say that he did it and she would not have to worry about it (Tr. III, 212-13).

Another inmate in the same pod, Joann Harper, testified that she looked out on the recreation area one evening and saw the defendant sitting alone and the defendant told her to come out and sit down (Tr. III, 239-40). Ms. Harper asked the defendant about her recent trip out of the county and the defendant told her that her step-father had molested her and that he stopped doing it when she got older but she did not know why (Tr. III, 241). The defendant also said that she had left her two children in her step-father's care and when she went to pick them up the little girl complained of her private area hurting (Tr. III, 241-42). The defendant said she and her boyfriend Mr. Martin had gone to confront her step-father about the alleged molestation (Tr. III, 242). About the confrontation, the defendant said, "I lost it. I had to put the old dog out of his misery" (Tr. III, 242-43).

The defendant's defense was that after she broke into Mr. Parenti's house in order to confront him, she left before Mr. Martin shot Mr. Parenti and before he doused the house in gasoline and lit the fire and, therefore, was not present when those crimes were committed (Tr. III, 31-32; S. Tr., 6). . . .

(Dkt. 10-4 at 11-19).

## Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Grounds I, II, III, IV, V (Part 2), and VI: State-Law Claims

Respondent alleges Grounds I, II, III, IV, V, and VI of the petition present claims with no bases for federal habeas corpus relief.

> The habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a)). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (holding that petitioner's claim that California misapplies its "some evidence" rule was not a cognizable claim on habeas); *See also Wilson*,

562 U.S. at 4 (sentencing challenge under state law not cognizable on habeas review); *Jeffers*, 497 U.S. 764, 779 (1990) (finding petitioner's claim that state misapplied its own aggravating circumstances was a state-law issue not cognizable on habeas review). The Tenth Circuit has held likewise. *See, e.g., Hooks v. Workman*, 606 F.3d 715, 748 (10th Cir. 2010) (holding that issue of correct jury instructions was one of state law); *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) ("Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." (citing *Estelle*, 502 U.S. at 67-68)).

### Ground I: Admission of Expert Testimony

Petitioner alleges in Ground I that the trial court admitted improper, prejudicial, and speculative testimony by Agent Virden under Okla. Stat. tit. 22, § 2002(A)(1)(a), regarding the melted shoe prints in the carpet at the crime scene. On direct appeal the Oklahoma Court of Criminal Appeals (OCCA) denied relief as follows:

> . . . Stribel argues that the trial court abused its discretion in allowing OSBI Agent Jenny Virden to give testimony, over defense objection, which the State failed to disclose in the discovery released to the defense prior to trial. The admissibility of evidence is within the discretion of the trial court, which will not be disturbed absent a clear showing of abuse, accompanied by prejudice to the accused. *Jackson v. State*, 146 P.3d 1149, 1165. . . .

> Prior to trial the defense filed a detailed request for discovery. The State responded with a Notice of Discovery which included OSBI Agent Jenny Virden's name, address and the disclosure that she was expected to testify "consistent with her report and about the crime scene." The State made Agent Virden's report available to the defense. It also made the cut out portion of carpet with melted shoe impressions found at the scene of the crime available to the defense for examination prior to trial. Agent Virden testified for the

State twice during trial. Before Virden took the stand the second time, defense counsel objected, arguing that he was concerned Virden would testify about whether the shoe prints melted into the carpet beside the decedent were left before or after the accelerant was poured. Counsel stated that this testimony was not anticipated because he had not received any information about this specific expected testimony in the discovery disclosed by the State. He stated that he expected only evidence that a size seven shoe impression from a Nike Shox shoe was found at the crime scene covered with soot.

Though details were not given, the information that Stribel was provided in discovery was sufficient to put her on notice that Agent Virden would likely testify about the melted footprints found in the carpet and that further investigation regarding Virden's anticipated testimony was in order. Since defense counsel was able to anticipate this during trial prior to Virden's testimony, he surely could have anticipated it prior to trial and taken steps to confirm his suspicions. If defense counsel had contacted Virden and set up an interview with her, he would have known the details of her anticipated testimony and taken appropriate steps to counter it. *See Powell v. State*, 995 P.2d 510, 525-26 (Okla. Crim. App. 2000); *Cuesta-Rodriguez v. State*, 247 P.3d 1192, 1198 n.5 (Okla. Crim. App. 2011). Under the facts of this case, the trial court did not abuse its discretion in allowing the testimony at issue.

*Stribel v. State*, No. F-2013-389, slip op. at 2-4 (Okla. Crim. App. 2014) (footnote omitted) (Dkt. 10-6).

The Court finds Petitioner's claim in Ground I is based on the application of state discovery rules and clearly presents an issue of state law which is not cognizable in this federal habeas action. Further, "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1997).

### Ground II: Admission of Improper, Prejudicial, and Speculative Expert Testimony

Petitioner next alleges Agent Virden's testimony was improper, prejudicial, and speculative, and the trial court erroneously admitted the testimony under state law. This

claim also was denied by the OCCA:

> During trial defense counsel stated that he anticipated Agent Virden would offer her opinion to the jury with regard to when the footprints melted into the carpet by the body were made in relation to when the accelerant was poured. Defense counsel asked to voir dire the witness on her qualifications to offer this opinion. Counsel's requested voir dire was allowed outside the presence of the jury. At the close of the voir dire, the trial court ruled that Agent Virden was qualified to testify as to her opinion regarding the timing of the shoe print melted into the carpet, giving exception to the defense.

> Stribel argues on appeal that this expert opinion should not have been admitted because it was improper, prejudicial and speculative. Expert testimony is that which is based on technical or specialized knowledge, skill, training, or education, and which assists the trier of fact. Okla. Stat. tit. 12, § [2702] (2011). An expert opinion may embrace the ultimate issue, as long as it does not tell jurors what result to reach. *Ball v. State*, 173 P.3d 81, 86 (Okla. Crim. App. 2007); *Warner v. State*, 144 P.3d 838, 863 (Okla. Crim. App. 2006). Of course, in order to be admissible, expert testimony must be relevant. Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12 § 2401 (2011). Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Okla. Stat. tit. 12 § 2403 (2011).

> Agent Virden was deemed qualified to give an opinion regarding the footprints melted into the carpet and, in light of the voir dire regarding her qualifications, this ruling was not an abuse of discretion. Her testimony was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. We find that Agent Virden's expert opinion was not improper, prejudicial or speculative and that there was no error in the admission of this testimony.

*Stribel*, slip op. at 5-6.

Petitioner's claim in Ground II is based on an evidentiary ruling that was a matter of

state law. She relied entirely upon state evidentiary rules to support her argument, and the

OCCA denied the claim solely on state law. *Stribel*, slip op. at 5-6. Therefore, Petitioner's claims concerning the admission of expert testimony are insufficient for federal habeas review. *See Jeffers*, 497 U.S. at 780. *See also Abshier v. Workman*, No. CIV-02-1138-D, 2010 WL 3259817, at *30 (W.D. Okla. Aug. 18, 2019) (finding petitioner's claim that expert doctor was unqualified to testify as an expert was a matter of state evidentiary law and was not cognizable on habeas review) (citing *Jeffers*, 497 U.S. at 780)) (unpublished). Again, there is no basis for federal habeas review.

### Ground III: Improperly Admitted Evidence about Codefendant's Convictions

Petitioner alleges in Ground III that the trial court improperly admitted evidence from Petitioner's codefendant, Dustin Martin, regarding his conviction for the murder of Tim Parenti and his conviction for accessory after the fact. On direct appeal, the OCCA found no merit in this claim:

> The defense called Stribel's codefendant, Dustin Martin, to testify. During direct examination, Martin told the jury that Stribel was the love of his life. He also told the jury in response to defense counsel's pointed inquiry that he was tried for Tim Parenti's death and he received two life sentences at the conclusion of that trial. Martin then testified that he and Stribel went to the house in Schulter to confront Parenti about allegations that Parenti had molested Stribel's children. Martin testified that he told Stribel to leave and after she was gone, he pointed a gun at Parenti's head and the gun discharged. Martin claimed that he poured gas around the house before setting it on fire and leaving.

> During cross examination, the prosecutor asked Martin about his two life sentences. Martin acknowledged that he was convicted of second degree murder and accessory after the fact to first degree murder. The prosecutor asked Martin if he was convicted of accessory after the fact for lying to help Stribel. Stribel argues on appeal that the trial court erred in allowing the State

to question Martin about his conviction for accessory after the fact to first degree murder. Defense counsel did not object to the questions regarding Martin's conviction for accessory after the fact. Accordingly, review for all but plain error has been waived. *Hancock v. State*, 155 P.3d 796, 813 (Okla. Crim. App. 2007).

Stribel advises this Court that evidence of a codefendant's guilty plea or conviction by a jury is not admissible as substantive evidence of a defendant's guilt. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983) (the guilt of a codefendant may not be used as substantive evidence of the defendant's guilt). Stribel concedes, however, that such evidence may be admissible for purposes of impeachment or to show the codefendant's participation in the crime. *United States v. Whitney*, 229 F.3d 1296, 1304 (10th Cir. 2000). In such circumstances, however, limiting instructions should be given and failure to do so may rise to the level of plain error. *United States v. Austin*, 786 F.2d 986, 991 (10th Cir. 1986). In determining whether the failure to give a cautionary instruction results in plain error, the Tenth Circuit Court of Appeals considers the following factors: (1) whether there was a proper purpose in introducing the guilty plea; (2) whether the guilty pleas were improperly emphasized or used as evidence of substantive guilt; (3) whether the alleged error was invited by defense counsel; (4) whether the failure to object could have been the result of tactical considerations; and (5) whether, in light of all of the evidence, the error was harmless beyond a reasonable doubt. *United States v. Pedraza*, 27 F.3d 1515, 1526 (10th Cir. 1994).

The prosecutor's cross examination regarding Martin's conviction for accessory after the fact to first degree murder was not to show that because Martin was guilty, Stribel must also be guilty, but rather was intended to impeach Martin and challenge his credibility as a witness by showing that he was in love with Stribel and would lie to protect her from prosecution. This was an appropriate purpose for questioning Martin about his conviction for accessory after the fact and the prosecutor's questions were not in error. While the defense should have asked for a limiting instruction regarding this evidence and the trial court should have given one, the failure to do so in this case was not plain error. There was a proper purpose for the introduction of the evidence, the evidence of Martin's conviction was not improperly emphasized or used as evidence of substantive guilt, it was invited by the direct examination of defense counsel, and, in light of all of the evidence introduced at trial, the omission of the limiting instruction was harmless beyond a reasonable doubt.

*Stribel*, slip op. at 6-8 (footnote omitted).

The OCCA reviewed this claim for plain error, because Petitioner did not object to Martin's testimony. She also did not raise a claim based on the lack of a jury instruction on the testimony. The OCCA found that in light of the evidence, any failure to give a limiting instruction was harmless beyond a reasonable doubt.

Petitioner's claim in Ground III is another state-law issue concerning the admission of evidence. Although she has cited federal cases in support of her claim, the citations do not transform the claim into a federal question. *See Nelson v. Biter*, 33 F. Supp.3d 1173, 1178 (C.D. Calif. 2014) (petitioner's citation to Eleventh Circuit case involving similar circumstances was an attempt to "federalize" his purely state law claim and did not transform his state law claim into a cognizable federal claim). *See also Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (habeas petitioner "may not . . . transform a state-law issue into a federal one merely by asserting a violation of due process").

While the OCCA raised *sua sponte* the issue of a limiting instruction, it did not find a federal constitutional error. *Stribel*, slip op. at 8. Instead, the OCCA held that any error was harmless beyond a reasonable doubt. *Id.* Petitioner does not alleges the violation of a specific constitutional right or allege the OCCA's determination of this claim was contrary to, or an unreasonable application of, Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). Furthermore the OCCA's reference to "unreasonably applied federal law" without any citation or discussion is insufficient to raise a federal claim. *See, e.g., Dunn v. White*, 880

F.2d at 1188, 1198 (10th Cir. Aug. 1, 1989) ("Plaintiff's vague assertion that he refused AIDS testing on generic 'religious grounds' . . . will not sustain a claim that he was entitled to any first amendment protection against testing."). Therefore, Petitioner's claim in Ground III is not cognizable and must be denied.

### Ground IV: Improper Jury Instruction about Witness's Invocation of Right to Remain Silent

In Ground IV, Petitioner alleges the state court improperly instructed the jury regarding Linda Parenti's invocation of her right to remain silent, in violation of Okla. Stat. tit. 12, § 2513(B) and Article II, § 27 of the Oklahoma Constitution. The OCCA denied this claim as follows:

> Before Mrs. Parenti was called to testify, the trial court was advised that she would not testify but would invoke her Fifth Amendment right against self-incrimination. Defense counsel did not object to the jury being told that Mrs. Parenti had appeared and invoked her Fifth Amendment right against self-incrimination. Stribel argues that the trial court erred when it told the jury why Mrs. Parenti would not be testifying. Stribel's failure to object to the trial court's comment to the jury waives review for all but plain error. *Postelle v. State*, 267 P.3d 114, 137 (Okla. Crim. App. 2011).

> Stribel cites Okla. Stat. tit. 12, § 2513 (2011) to support her position that claims of privilege are to be kept from the jury's knowledge at trial. This Court has held that section 2513 requires the claim of privilege be asserted outside the jury's presence, "to the extent practicable." *Jackson v. State*, 964 P.2d 875, 886 (Okla. Crim. App. 1998). *See also Banks v. State*, 43 P.3d 390, 398 (Okla. Crim. App. 2002). It follows then, that after the parties had taken the proper steps to avoid having Parenti assert her privilege on the witness stand, it was in fact error for the trial court to advise the jury that she had invoked her Fifth Amendment right against self-incrimination. However, this error, which was not met with objection, does not necessarily require reversal.

> The record supports the finding that the State took conscious steps to

have Parenti assert her privilege outside the presence of the jury and did not build its case out of inferences arising from use of the testimonial privilege. Nor did Parenti's assertion of the privilege against self-incrimination add critical weight to the prosecution's case in a form not subject to cross-examination. On this record, we find that while the trial court's comment to the jury was actual error, it was not plain error as it did not affect the outcome of the proceeding. *See Namet v. United States*, 373 U.S. 179, 186-87 (1963); *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006).

*Stribel*, slip op. at 10-11.

This Court finds the claim presented in Ground IV is an issue of state law that cannot be adjudicated in a federal habeas court. Further, Petitioner never made a claim that any specific federal constitutional right was violated. Absent a constitutional error, Petitioner's claim is a matter of state law that is not cognizable in a federal habeas action. *See Cooke*, 562 U.S. at 222 ("[W]e have long recognized that 'a mere error of state law' is not a denial of due process." (citations omitted)). This ground for habeas relief fails.

### Ground V (Part 2): Hearsay Evidence Regarding H.S.[1]

In Ground V, Petitioner claims the trial court erroneously allowed hearsay evidence through OSBI agents and lay witness Towana Smith and then unreasonably prohibited Petitioner from using the hearsay to impeach these witnesses by admission of a video recording. The OCCA found no merit in the second part of this claim:

During cross-examination, after OSBI Agent Hamilton could not recall several portions of her forensic interview with H.S., defense counsel asked that the video-taped interview be admitted into evidence. The State objected and

---

[1] Petitioner raises two claims in Ground V. The first claim is that her Confrontation Clause rights were violated by the introduction of alleged hearsay testimony. The second claim is that the trial court erroneously denied admission of the video recording of H.S.'s interview.

defense counsel agreed to use the tape, outside the presence of the jury, to refresh the witness's memory. Stribel complains on appeal her request to admit Agent Hamilton's video-taped interview with H.S. into evidence should have been granted as it was admissible under Okla. Stat. tit. 12, § 2705 (2011). Although the admission of facts or data relied upon by an expert in forming his or her opinions is permissible under section 2705, the admission of such evidence remains within the sound discretion of the trial court. *Ake v. State*, 778 P.2d 460, 467 (Okla Crim. App. 1989).

Stribel asserts that the State presented Hamilton as a witness to provide her expert opinion on whether or not H.S. was sexually abused by Tim Parenti. She argues that because Hamilton's expert opinion was based upon her forensic interviews with H.S., and these interviews provided the "underlying fact or data" supporting her opinion, the trial court abused its discretion in denying defense counsel's request to admit the taped interview into evidence. The record does not support the finding that Agent Hamilton gave an opinion as to whether H.S. was sexually abused. Rather, she testified that neither H.S. nor her brother disclosed any abuse. As this was testimony about an observation and not an expert opinion, Stribel has failed to show that she was entitled to have the video-tape admitted under Okla. Stat. tit. 12, § 2705 (2011). The trial court's ruling on this evidentiary issue was not an abuse of discretion.

*Stribel*, slip op. at 13-14.

The Court finds Petitioner's claim in Ground V regarding admission of the video recording clearly was based solely on the state evidentiary code. For this reason, it is not cognizable in this habeas petition.

### Ground VI: Instruction on Lesser-Included Offense

In Ground VI, Petitioner claims the trial court erred when it improperly instructed the jury that they had to unanimously acquit Petitioner of First Degree Murder before they could even consider a lesser-included offense. The OCCA denied relief as follows:

Stribel's jury was instructed on the charged offense of first degree

18

murder and on the lesser offenses of second degree murder and first degree manslaughter. She argues that the trial court erred in not instructing the jury pursuant to the standard jury instruction, OUJI-CR(2d) 10-24, and, therefore, the jury was not properly allowed to consider the lesser offenses. As defense counsel did not object to the instructions given, all but plain error has been waived for review on appeal. *Day v. State*, 303 P.3d 291, 298 (Okla. Crim. App. 2013).

This Court has held that, "[t]he trial court should instruct on the applicable law and use the Uniform Jury Instructions whenever possible; however, a deviation from the Uniform Instructions does not automatically result in reversible error." *Marquez-Burrola v. State*, 157 P.3d 749, 758 (Okla. Crim. App. 2007). In *Marquez-Burrola*, this Court noted that [the] original version of OUJI-CR (2d) 10-24 was not incorrect and did not misstate the law; the modified version simply made the law clearer. *Id*. Accordingly, the Court found no plain error occurred where the jury was not instructed on the modified version of OUJI-CR (2d) 10-24. We find likewise in the present case. While it would have been better to give the full and accurate jury instruction as sanctioned in the Uniform Jury Instructions, the trial court's error in failing to do so did not rise to the level of plain error.

*Stribel*, slip op. at 14-15.

Again, Petitioner is challenging an alleged error under state law, thus it is not cognizable in this habeas action. "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *McGuire*, 502 U.S. at 71-72.

Furthermore, "'[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997), *cert. denied*, 547 U.S. 1166 (2006)). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes v. Thomas*, 46 F.3d

979, 984 (10th Cir. 1995) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Habeas relief is not warranted for this claim.

## Ground V (Part 1):  Hearsay Evidence/Confrontation Clause

Petitioner alleges the trial court erroneously admitted testimony from OSBI Agent Andrea Hamilton and from Towana Smith, who was Petitioner's former mother-in-law. Hamilton and Smith testified that neither of Petitioner's two children disclosed any abuse by Mr. Parenti or anyone else.  Petitioner asserts the testimony was inadmissible hearsay that violated her right to confrontation.  The OCCA found no merit in the claim:

> Stribel told at least a couple of people who testified at trial that Tim Parenti had molested her children.  She told Andrew Smith that this was why she confronted and killed Parenti.  In an apparent attempt to discredit Stribel's proffered motive for killing Parenti, the State sought to present the testimony of Towana Smith, the children's paternal grandmother, who observed their behavior subsequent to the allegations of molestation.  The State also offered the testimony of OSBI Agent Andrea Hamilton, who conducted forensic interviews with the children for this same purpose.  Prior to trial, the defense filed a motion in limine seeking to preclude the admission of the anticipated testimony of these two witnesses arguing that such testimony would include inadmissible hearsay and would violate her right to confront witnesses against her.  The trial court denied Stribel's motion finding that Smith and Hamilton would not be allowed to testify about hearsay statements made by the children but they would be allowed limited opportunity to testify about their observations after observing and speaking with the children.  Defense counsel did not renew his hearsay objection to Smith's testimony at trial but he did object on the grounds of hearsay during portions of Hamilton's testimony.  . . .

> No hearsay statements made by the children were admitted at trial through direct examination of Hamilton.  Okla. Stat. tit. 12 § 2801(A)(3) (2011).  Stribel's claim that the testimony violated her constitutional right to confrontation fails as the statements at issue were not hearsay.  *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004) (the Supreme Court held that the Sixth

Amendment confrontation right applies not only to in-court testimony, but also to testimonial hearsay).

　　　　With regard to Towana Smith, the record reflects that no hearsay was admitted through her own testimony and that the defense did not object on the grounds of hearsay to any of Smith's testimony. There was no error here, plain or otherwise.

*Stribel*, slip op. at 11-13.

The Confrontation Clause guarantees the right of a defendant in a criminal trial to be confronted with the witnesses against him. *Crawford*. 541 U.S. at 42. The admission of testimonial hearsay against a defendant where the declarant does not testify and the defendant had no right of cross-examination of the declarant violates the Confrontation Clause. *Id.* at 51-52. Testimonial hearsay includes statements made during custodial interrogation, affidavits, prior testimony not subject to cross-examination by the defendant, or statements which the declarant would reasonably expect to be used prosecutorially. *Id*. at 51. The Court, however, expressly stated that the Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).

In analyzing a claim under *Crawford*, the Court must undertake a two-part inquiry before a violation can be found. First, the Court must determine whether the statement was hearsay, and second, whether such hearsay was testimonial. *See United States v. Summers*, 414 F.3d 1287, 1299-1300 (10th Cir. 2005) (applying this two-part inquiry in addressing *Crawford* error and finding that statement was hearsay under Fed. R. Evid. 802 and was

testimonial).  Under Oklahoma and federal law, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Okla. Stat. tit. 12, § 2801(3).  *See also* Fed. R. Evid. 801(c)(1)-(2) ("'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

In Petitioner's case, OSBI Agent Hamilton testified that she interviewed Petitioner's children, and neither child disclosed any abuse by Mr. Parenti or by anyone else (Tr. III, 62, 65-66).  Towana Smith, the paternal step-grandmother of the two children, testified she never saw the children act out sexually, and they never disclosed any abuse to her (Tr. III, 97-98, 103, 111-12).  Neither the testimony of Agent Hamilton nor the testimony of Ms. Smith was hearsay, because it did not contain an out-of-court statement by either child that was offered to prove the truth of the matter asserted.  Okla. Stat. tit. 12, § 2801(3).  Further, because both witnesses testified about their own observations of the two children, the testimony was not hearsay.  *See Williams v. Oklahoma*, 22 P.3d 702, 719 (Okla. Crim. App. 2001) (holding testimony was not hearsay where statement was based upon witness's personal perceptions and observations).

The Court finds Petitioner has made no showing that the OCCA's adjudication of her Confrontation Clause claim unreasonably applied established Supreme Court law.  See 28 U.S.C. § 2254(d)(1).  Further, Petitioner has not shown the OCCA's determination of this

claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Therefore, habeas relief cannot be granted on this claim.

## Ground VII:  Prosecutorial Misconduct

Petitioner alleges in Ground VII that the prosecutor committed misconduct when he improperly impeached Codefendant Dustin Martin, improperly used Martin's prior unsworn statement and impeachment testimony as substantive evidence of guilt during closing argument, and misstated the evidence and the law during closing argument.  On direct appeal, the OCCA denied these claims:

> . . . Stribel complains that several instances of prosecutorial misconduct operated to deprive her of her right to a fair trial.  Stribel objected to some of the other alleged misconduct but not to all of it.  We review the comments not met with objection at trial for plain error only.  *Stouffer v. State*, 147 P.3d 245, 274.  (Okla. Crim. App. 2006).  We also note that where an objection has been made and the jury admonished, any error [sic] comment is deemed cured unless the comment appears to have determined the result of the trial.  *Harmon v. State*, 248 P.3d 918, 935 (Okla. Crim. App. 2011).  "This Court will not grant relief based on prosecutorial misconduct unless the State's argument is so flagrant and that it so infected the defendant's trial that it was rendered fundamentally unfair."  *Williams v. State*, 188 P.3d 208, 230 (Okla. Crim. App. 2008).  We evaluate alleged prosecutorial misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel.  *Hanson v. State*, 206 P.3d 1020, 1028 (Okla. Crim. App. 2009).

> A review of the record in the present case reveals that many of the comments at issue were not met with objection at trial.  These comments did not affect the trial and cannot be found to have been plain error.  The trial court admonished the jury regarding several comments that were met with objection and this admonishment can be found to have cured any error.

Considering the alleged misconduct within the context of the entire trial, we find that none of the alleged improper comments, either considered individually or cumulatively rendered Stribel's trial fundamentally unfair. Relief is not warranted.

*Stribel*, slip op. at 15-16.

In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

Further, to obtain habeas relief on a prosecutorial misconduct claim, a petitioner must show the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Petitioner first complains that the prosecutor improperly impeached Codefendant Martin during cross-examination. Martin testified that before turning himself in to authorities, he called his mother and told her he had shot a man and was turning himself in

24

for murder (Tr. V, 217). The prosecutor asked Martin if he remembered a telephone conversation with his mother in which Martin told her that Petitioner had committed the offenses (Tr. V, 217). Martin responded that he did not remember that conversation, because he had not spoken with his mother since going to jail (Tr. 218). The prosecutor clarified, "Before you went to jail and turned yourself in, your mother came in here in your trial and testified, in front of you and your lawyer, that you called her right before you turned yourself in and said that [Petitioner] is the one . . . that shot Timothy" (Tr. 217). When Martin denied making that statement, the prosecutor asked, "So your mother lied in court, didn't she?" (Tr. V, 217-18). Before Martin could answer, defense counsel objected to the question as argumentative, and the trial court sustained (Tr. V, 218). Defense counsel did not request an admonishment (Tr. V, 218).

Even assuming *arguendo* the question was improper, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (citing *Caldwell v. Mississippi*, 472 U.S. 320, 338 (1985) (plurality). Here, the question about the testimony by Martin's mother never was answered, and this was only a brief moment in the lengthy trial where the evidence against Petitioner was overwhelming. In addition, the jury was instructed that Petitioner was presumed innocent (O.R. 239) and that statements by attorneys were not evidence (O.R. 240; Tr. VI, 73). In light of the fact that the question was not answered, the overwhelming evidence of guilt, and the proper instructions concerning the evidence, the Court finds

Petitioner's trial was not rendered fundamentally unfair by the mere posing of the question. *See Donnelly*, 416 U.S. at 643. Thus, Petitioner has failed to demonstrate that the OCCA's determination of the claim was contrary to, or an unreasonable application of, established Supreme Court precedent. 28 U.S.C. § 2254(d).

Petitioner next claims the prosecutor attempted to impeach Martin's testimony by presenting in rebuttal OSBI Agent Akers, who had interviewed Martin and spoke with him during his transport to Grady County (Tr. VI, 4-5, 9-11). Akers admitted on cross-examination that he did not memorialize Martin' statement at the time it was made (Tr. 9-10).

Akers testified that Martin said Petitioner had killed Timothy Parenti, and Martin "was going to take the wrap [sic] or take the fall for the murder," because Petitioner "had more to lose" (Tr. VI, 8). In closing, the State argued to the jury to use Martin's unsworn statement given to Akers that Petitioner shot Parenti as substantive evidence of her guilt (Tr. VI, 25):

> The first time Dustin Martin was interviewed by law enforcement, even he has to admit on the witness stand when he's impeached about his word to you, the truth he's telling you yesterday, the first thing he tells law enforcement, Agent Akers, is she shot him. She had the gun coming down the hall and shot him. That's what he said. He saw her shoot Tim Parenti.

(Tr. VI, 25). Petitioner did not object to this statement (Tr. VI, 25).

Here, the Court finds the prosecutor was arguing that Martin's testimony was not credible, but Martin's statement to Akers shortly after the murder was believable. The State was further asserting that Martin's confession to Petitioner's jury was fabricated in an attempt to save Petitioner, "the love of his life." The transcript does not support Petitioner's

assertion that the prosecutor improperly used Martin's testimony, thus there was no misconduct. The Court further finds Petitioner has failed to show the statement rendered the trial so fundamentally unfair as to be a denial of due process. Thus, Petitioner has failed to demonstrate the OCCA's determination of the claim was contrary to, or an unreasonable application of, established Supreme Court precedent. 28 U.S.C. § 2254 (d).

In her next claim, Petitioner asserts there was no evidence to support the prosecutor's closing argument that Petitioner and Martin burned their clothes along with the Buick (Tr. VI, 29-30). OSBI Special Agent Elizabeth Green testified she was called out on November 1, 2011, to investigate the severely burned-out Buick which was registered to Linda Parenti (Tr. III, 39, 42, 44). Agent Green sifted through the remains of the car and found some type of cloth, although she was not able to determine if it was upholstery or clothing (Tr. III, 46).

Dustin Martin testified that after dumping gas throughout the house and on Mr. Parenti's body and lighting the fire, both he and Petitioner got rid of their clothes (Tr. V, 225). Martin also testified that Petitioner left in Mr. Parenti's vehicle (Tr. V, 164).

OSBI Special Agent John Jones testified that the navigation device in Mr. Parenti's truck showed readings from western Oklahoma on October 30, 2011, between 4:30 a.m. to noon, which was close to the location where the burned-out car was found (Tr. III, 58). From this testimony, it was reasonable to infer that Petitioner and Martin's clothing were covered with gas or fumes from pouring the accelerant in the house and that, in order to hide their involvement in the crime, they placed their clothing inside the Buick and set it on fire.

It is well established that a prosecutor may properly "comment on the circumstances of the crime made known to the jury during trial" and that a prosecutor "also possesses reasonable latitude in drawing inferences from the record." *Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002) (finding prosecutor's comments during closing argument regarding the manner of victim's death were reasonable inferences from the evidence). In this instance, the Court finds the prosecutor's remarks were reasonable inferences based on the evidence. Because the evidence in this case supported the inference, Petitioner has not demonstrated that her trial was rendered so fundamentally unfair by the prosecutor's closing argument that she was denied due process of law. *Donnelly*, 416 U.S. at 645. Consequently, she cannot demonstrate that the OCCA's opinion denying relief on this claim was contrary to, or an unreasonable application of, established Supreme Court precedent, or that the decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d).

Petitioner next claims the prosecutor improperly used Martin's statement to Agent Akers as substantive evidence of Petitioner's guilt during the second closing argument. The prosecutor's statement must be evaluated in context. Defense counsel argued during closing that if Petitioner had planned to kill Mr. Parenti, she would not have told Cheryl Flurry that Petitioner's mother, Linda Parenti, could make it look like a heart attack (Tr. VI, 43). Defense counsel then stated that the gun went off and Martin "didn't know what to do," but "[h]e remembers seeing the gas cans in there." (Tr. VI, 43). Defense counsel called the

28

prosecutor "dishonest" and argued that Martin's DNA was found on the latex gloves, and Martin was the one who testified that he killed Mr. Parenti (Tr. VI, 44-45). Counsel further stated that the State would try to argue in second closing that Dustin Martin was lying and would say "he didn't tell anyone until just today. You guys are the first to hear this. He's lying." (Tr. VI, 61).

In response, the prosecutor argued there was overwhelming evidence against Petitioner, including her confessions to three people (Tr. VI, 66). In addition, Petitioner told Cheryl Flurry that she could kill Mr. Parenti and plead insanity, because Mr. Parenti had abused her, and Linda Parenti was a registered nurse who could make the death look like an accident (Tr. VI, 67). The prosecutor stated that Dustin Martin had little to lose with his testimony, because he already had two life sentences (Tr. VI, 69-70).

This Court finds the prosecutor was responding to defense counsel's argument and trying to demonstrate that Dustin Martin's confession to the crime in Petitioner's case was unworthy of belief, because he did not make the admission in his own trial. He instead waited until he already had been convicted and had nothing to lose by confessing in this case.

On direct appeal, the State alleged the argument was invited (Dkt. 10-4 at 40-41). The Supreme Court has explained that "the idea of 'invited response' is not to excuse improper comments, but to determine their effect on the trial as a whole." *Darden*, 477 U.S. at 182 (citing *United States v. Young*, 470 U.S. 1 (1985)). In this case, the trial court instructed the jurors that their decision was to be made on the basis of the evidence alone and that the

argument of counsel was not evidence (O.R. 240). As previously discussed above, the evidence was overwhelming and clearly supported the finding of guilt on all charges, and these circumstances all reduced the likelihood that the jury's decision was improperly influenced by attorney argument.

Petitioner also complains that the State argued in the second closing that the jury should improperly use Martin's statement concerning the property theft, which included hearsay from Petitioner's mother who had invoked her right not to testify:

> . . . [T]here's been some dispute about a burglary, I guess. That, well, they didn't really intend to do anything when they broke in the house and waited on him, and, you know, and then decided, you know, to steal some property. Some--you know, Dustin Martin kind of took some car titles. You know, that he told the officer that he was told to do that by the Defendant's mother Linda, who, by the way, didn't take the stand and took the Fifth Amendment.

(Tr. VI, 70). Again, no objection was made by defense counsel. In addition, Petitioner has failed to articulate how the statement resulted in a denial of due process. As such, the Court finds this claim has no merit.

The Court finds Petitioner has failed to show her trial was rendered so fundamentally unfair by this statement that she was denied due process of law. *See Donnelly*, 416 U.S. at 645. She, therefore, cannot demonstrate that the OCCA's opinion denying relief on this claim was contrary to, or an unreasonable application of, established Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d).

Petitioner next claims the prosecutor misstated the evidence when he was responding to Petitioner's claims that Andrew Smith was not a credible witness and stated, "He's never said anything different. That's what he's always told." (Tr. VI, 72). Petitioner objected, stating this was a mischaracterization of the evidence, and there was an instruction regarding a prior inconsistent statement (Tr. VI, 72-73). The trial court overruled the objection and instructed the jury, "Again, ladies and gentlemen, this is closing argument. This is not evidence. And you'll remember what came to you from the witness stand." (Tr. VI, 73).

"The latitude afforded to prosecutors in arguing reasonable inferences from the evidence extends to attacks on a witness's credibility." *See Hooper*, 314 F.3d at 1172. In this case, the prosecutor was discussing the credibility of Andrew Smith. The Court finds this was well within the latitude afforded to prosecutors during closing argument and the comment was proper. *Id*.

Even if the comment could be considered error, the trial court properly marshaled the jury's consideration by again admonishing the jury that statements by the attorneys were not evidence, and it was their memory of the evidence that controlled their determination. (O.R. 240; Tr. VI, 73). Jurors are presumed to follow their instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Generally, a trial court's instructions carry more weight than arguments of counsel. *See Boyde v. California*, 404 U.S. 370, 384 (1990). In light of the overwhelming evidence of guilt and the trial court's instructions, it cannot be said that Petitioner's trial was rendered so fundamentally unfair by the prosecutor's closing argument

that she was denied due process of law. *Donnelly*, 416 U.S. at 645, 647-48. *See also Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) (finding that in light of trial court's instructions and strong evidence of guilt, prosecutor's misstatement of law did not render trial fundamentally unfair). Consequently, she cannot demonstrate that the OCCA's opinion denying relief on this claim was contrary to, or an unreasonable application of, established Supreme Court precedent. 28 U.S.C. § 2254(d).

Petitioner also complains that the prosecutor misstated the law when he stated to the jury:

> [PROSECUTOR]: And, ladies and gentlemen, if for some reason that you think, well, I'm not sure whether she was the shooter or not, then you have a second degree murder instruction as well, as far as them aiding and abetting and helping each other. And, certainly, that's what Dustin Martin was convicted of. That certainly is involved in this. But--but why? And what has been done to try to suggest otherwise as far as she would say to her kids'--

> [DEFENSE COUNSEL]: (Interposing) Judge, I'm sorry.

> [PROSECUTOR]: --grandparent--

> [DEFENSE COUNSEL]: I'm going to have to object to the reference that for some reason if they find that she didn't shoot him, that that's a second degree murder charge. I--objection.

> THE COURT: Noted. And, again, ladies and gentlemen, we'll provide you with a copy of the instructions that the Court read for your consideration.

(Tr. VI, 80-81).

The Court finds that even if this was a misstatement of law, Petitioner has failed to demonstrate she was denied a fundamentally fair trial as a result. The effect of any

misstatements can be minimized by instructions to the jury that they "should consider only the evidence introduced at trial, [and] that the attorneys' statements and arguments are not evidence." *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005). Here, the jury was instructed to determine the defendant's guilt based only on the evidence presented at trial (O.R. 236-37). The trial court also instructed that the prosecutor's statements were not evidence (O.R. 240; Tr. VI, 73). This Court finds the statement was a brief comment in the final stages of an intense, five-day trial. In light of the overwhelming evidence of guilt, it cannot be said that any misstatement, if there was one, was so injurious as to have rendered the trial fundamentally unfair and the verdict a denial of due process. *Darden*, 477 U.S. at 180; *Bland*, 459 F.3d at 1015.

Petitioner further complains that after the prosecutor made the statements set forth above, he began discussing the first and second degree murder instructions and the elements of the crimes (Tr. VI, 81-82). The prosecutor argued that the State had to prove the elements of the offenses beyond a reasonable doubt, stating, "Only the elements. Not extra things. Just the elements of what we're required to prove beyond a reasonable doubt" (Tr. VI, 82).

Defense counsel interrupted the statement, arguing it was a mischaracterization of the evidence and that the State did "have a requirement, circumstantial evidence, to prove those beyond a reasonable doubt" (Tr. VI, 82). Counsel then asked for a mistrial, which the trial court denied, and then the court advised the jury they would receive a copy of the instructions (Tr. VI, 82).

This Court finds the prosecutor properly stated that a guilty verdict was not warranted unless the State proved the elements of the charged crimes beyond a reasonable doubt (Tr. VI, 82). *See Patterson v. New York*, 432 U.S. 197, 215 (1977) (state must prove every element of an offense beyond a reasonable doubt). As Petitioner failed to demonstrate any misconduct at all, it cannot be said that the Petitioner's trial was rendered so fundamentally unfair by the prosecutor's closing argument that she was denied due process of law. *Donnelly*, 416 U.S. at 645, 647-48. Consequently, she cannot demonstrate that the OCCA's opinion denying relief on this claim was contrary to, or an unreasonable application of, established Supreme Court precedent. 28 U.S.C. § 2254(d).

Finally, Petitioner claims without any supporting authority that the prosecutor "improperly asked the jury to convict and punish Stribel as compared to Martin" (Dkt. 2 at 57). Again, defense counsel made no objection (Tr. VI, 84). This Court finds that any improper misstatement by the prosecutor was minimized by instructions to the jury that they should consider only the evidence introduced at trial and that the attorneys' statements and arguments are not evidence (O.R. 236-37, 240; Tr. VI, 73). *See Thornburg*, 422 F.3d at 1134. Again, the evidence against Petitioner was overwhelming. In light of these facts, the Court finds Petitioner has failed to argue and demonstrate that her trial was so fundamentally unfair as to be a denial of due process. *Donnelly*, 416 U.S. at 645, 647-48. She, therefore, cannot show that the OCCA's opinion denying relief on this claim was contrary to, or an unreasonable application of, established Supreme Court precedent. 28 U.S.C. § 2254(d).

Based on the reasons set forth above, this Court finds habeas relief cannot be granted on Petitioner's claims of prosecutorial misconduct.

## Ground VIII: Plea Agreements with Jailhouse Informants

In Ground VIII Petitioner alleges the State intentionally withheld its plea agreements with jailhouse informants. The OCCA set forth the chronology of the events, considered Petitioner's claim, and denied relief:

> On April 3, 2013, Stribel filed a motion for new trial and request for evidentiary hearing. This motion stated that the jailhouse informant who testified against Stribel at trial, JoAnn Harper, was released from custody, pled into drug court and received probation within 48-72 hours after the guilty verdict was rendered against Stribel. Harper had testified about incriminating statements Stribel had made while awaiting trial. Harper also testified that she had not been offered anything in exchange for her testimony. At sentencing on April 13, 2013 [sic],[2] a hearing was held on Stribel's motion for new trial and request for evidentiary hearing. At the sentencing hearing the prosecutor, Mr. Barris, testified that he and Harper's attorney had discussions regarding the State's intent to have Harper testify at Stribel's trial and it was agreed that there would be no recommendations or offers made by the State to Harper in exchange for her testimony against Stribel. After the trial Harper applied to Drug Court and was admitted into the program. Burris testified that Harper's acceptance into Drug Court was based upon her eligibility and not because of any agreement made prior to trial. The trial court denied the motion for new trial and request for evidentiary hearing.
>
> Along with her brief-in-chief, Stribel filed another motion for new trial and request for evidentiary hearing on newly discovered evidence and brief in support. This motion, again, concerned Harper's trial testimony and subsequent acceptance into the Drug Court program. In this motion for new

_____

[2] The docket sheet for Petitioner's case indicates Petitioner's motion for new trial and evidentiary hearing was denied on April 3, 2013, and she also was sentenced on that date. The Court takes judicial notice of the public records of the Oklahoma State Courts Network at http://www.oscn.net. *See Pace v. Addison*, No. CIV-14-0750-HE, 2014 WL 5780744, at *1 n.1 (W.D. Okla. Nov. 5, 2014).

trial Stribel noted that subsequent to her trial, she learned that another inmate heard Harper's attorney tell her that unless she testified the State would not consider drug court. Stribel avers that this is new evidence which requires either that she be granted a new trial or an evidentiary hearing on newly discovered evidence. The test for whether a motion for new trial should be granted based upon newly discovered evidence is: (1) whether the evidence is material; (2) whether the evidence could not have been discovered before trial with reasonable diligence; (3) whether the evidence is cumulative; and (4) whether the evidence creates a reasonable probability that, had it been introduced at trial, it would have changed the outcome. Okla. Stat. tit. 22, § 952 (2011). *Underwood v. State*, 252 P.3d 221, 254-55 (Okla. Crim. App. 2011). Stribel has not shown a reasonable probability that if this evidence had been introduced at trial the outcome of the proceeding would be different. Stribel's motion for a new trial and request for an evidentiary hearing should be denied.

*Stribel*, slip op. at 19-20.

Petitioner argues that because JoAnn Harper had at least two felony convictions, the district attorney's office had to waive the prohibition against probation for her to have been allowed into drug court. Petitioner maintains this deal was contemplated at the time of Harper's testimony; however, the district attorney's office refused to disclose any anticipated deal with the witness. As stated above in the OCCA's opinion, the trial court held a hearing on this issue, and the district attorney testified that there was no deal or arrangement with Ms. Harper.

Petitioner claims the OCCA's denial of an evidentiary hearing to investigate these claims was of "constitutional magnitude" (Dkt. 2 at 61). She, however, has failed to develop the claim further by identifying any particular constitutional violation. This deficiency makes the allegation insufficient to state a claim. *See, e.g., Dunn*, 880 F.2d at 1198 (holding that

a prisoner's "vague assertion that he refused AIDS testing on generic 'religious grounds' . . will not sustain a claim that he was entitled to any first amendment protection against testing").

Petitioner cites *Douglas v. Workman*, 560 F.3d 1186 (10th Cir. 2009), for the proposition that failure to disclose a tacit deal in exchange for testimony was reversible error. *Douglas*, however, was decided on a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and was not in the context of the failure to grant an evidentiary hearing. Therefore, *Douglas* is distinguishable and inapplicable.

The Court notes that because Petitioner is represented by counsel, her claims are not entitled to the liberal construction due to pro se prisoners and must be taken at face value. *See Rutledge v. United States*, 230 F.3d 1041, 1052 (7th Cir. 2000). Further, because Petitioner has failed to allege, much less demonstrate, she is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), her claim is merely one of state-law error. Consequently, this Court cannot further analyze her claim or grant relief to her. *See Cooke*, 562 U.S. at 219; *Corcoran*, 562 U.S. 1, 5 (2010) (per curiam); *McGuire*, 502 U.S. at 67; *Jeffers*, 497 U.S. at 780. This ground for habeas corpus relief fails.

The Court further finds that to the extent Petitioner is complaining that the OCCA erroneously denied her request for an evidentiary hearing and a new trial, she has failed to argue or show the OCCA's decision denying the request was contrary to, or an unreasonable application of, clearly established Supreme Court law, pursuant to 28 U.S.C. § 2254(d).

Petitioner's one-sentence request for an evidentiary hearing in this Court also must be denied. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court's ability to grant evidentiary hearings is strictly limited. *Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006). The Court finds an evidentiary hearing is not warranted, because Petitioner's claims can be resolved on the record. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858-59 (10th Cir. 2005) (citing *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003)). Furthermore, a district court need not hold an evidentiary hearing in a habeas case where "there is nothing in the record that indicates [the petitioner] is entitled to any relief." *Stouffer v. Workman*, 348 F. App'x 401, 405 (10th Cir. 2009); *see also Cleveland v. Sharp*, 672 Fed. App'x 824, 826 (10th Cir. 2016) ("Petitioner is not entitled to an evidentiary hearing on meritless claims.").

## Ground IX:  Cumulative Error

In Petitioner's Ninth ground for relief, she alleges that cumulative error denied her a fair trial. The OCCA addressed this issue on the merits and denied relief:

> Finally, Stribel claims that trial errors, when considered cumulatively, deprived her of her constitutional right to a fair trial. This Court has recognized that when there are "numerous irregularities during the course of [a] trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *DeRosa v. State*, 89 P.3d 1124, 1157 (Okla. Crim. App. 2004) (quoting *Lewis v. State*, 970 P.2d 1158, 1176 (Okla. Crim. App. 1998). Upon review of Stribel'[s] claims for relief and the record in this case we conclude that the errors and irregularities, even when considered in the aggregate, do not require relief because they did not render the trial fundamentally unfair, taint the jury's verdict, or render sentencing unreliable. The errors were harmless beyond a reasonable doubt, individually and cumulatively.

*Stribel*, slip op. at 18-19.

In this case, the OCCA found the failure to give a limiting instruction with respect to Dustin Martin's testimony was harmless beyond a reasonable doubt. *Stribel*, slip op. at 8. The OCCA also found the trial court's statement to the jury that Linda Parenti had invoked her Fifth Amendment right not to testify was error, but it did not affect the outcome of the proceedings. *Id.*, slip op. at 11. In addition, the OCCA found harmless trial counsel's failure to request the limiting instruction regarding Dustin Martin's testimony about his conviction. *Id.*, slip op. at 17. Therefore, the OCCA considered these errors in its analysis of cumulative error.

Because Petitioner's habeas petition did not reassert her claim raised on direct appeal concerning ineffective assistance of trial counsel, this Court may not consider this error in its analysis of cumulative error. *See, e.g., Young v. Sirmons*, 551 F.3d 942, 973 (10th Cir. 2008) (declining to consider claims for purposes of cumulative error analysis that were rejected by federal district court and COA was denied on these claims). *See also Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (holding that complained-of error in procedurally barred claims may not be considered for purposes of cumulative error review).

The two remaining errors that were reasserted in this habeas action concern exclusively state-law error, as addressed in Grounds III and V above. The Court only may consider federal constitutional errors in the aggregate for purposes of cumulative-error review. *See Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013); *Young*, 551 F.3d at

973.  Therefore, this ground for habeas relief also fails.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2).  In addition, she has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 2) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 19th day of September 2018.

**Dated this 19ᵗʰ day of September, 2018.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

40